UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:19-cv-05230-BAT

**ORDER REVERSING AND REMANDING**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. He contends the ALJ erred when he failed to (1) provide clear and convincing reasons for rejecting Plaintiff's testimony; (2) provide specific and legitimate reasons for rejecting an examining physician's opinion; (3) properly account for a DDS consultant's opinion in his residual functional capacity ("RFC") finding; and, (4) provide germane reasons for rejecting the testimony of Plaintiff's wife. Dkt. 10.

As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was 48 years old on the date of the ALJ's decision. Tr. 165. He graduated from high school and attended three years of college. Tr. 46. He served in the Navy from 1990 to 1997, the Army from 1999 to 2002, and as a heavy equipment mechanic at Fort Lewis for the

ORDER REVERSING AND REMANDING - 1

Department of Defense from 2003 until 2016. Tr. 46, 165, 515, 638. During that time, Plaintiff had four back and neck surgeries. He complains of tension headaches and migraines that lasted from a couple of hours to days. Tr. 51. He returned to work after his last two surgeries at a light, less than full-time level, but was unable to continue. He was medically retired in March 2018. Tr. 52. He has a 100% Veteran's Association ("VA") disability rating for a service connected disability. Tr. 495.

On September 25, 2016, Plaintiff applied for Disability Insurance Benefits with an alleged onset date of August 13, 2016. Tr. 159-68. He later amended the onset date to July 26, 2017. Tr. 15. His application was denied initially and on reconsideration. Tr. 65-99. A hearing was held on May 16, 2018, before ALJ Keith Allred. Tr. 34-64. On August 29, 2018, Judge Allred issued an unfavorable decision. Tr. 12-33. On January 22, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff brings this action for judicial review pursuant to 42 U.S.C. § 405(g).

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found that Plaintiff had not performed substantial gainful activity since his amended onset date at step one of the sequential evaluation process. Tr. 15. At step two, Judge Allred found that Plaintiff suffered from severe degenerative disc disease, major joint dysfunction (right knee disorder), affective disorder, and migraine. Tr. 17. At step three, he found that these impairments did not meet or equal any of the Listings. *Id.* Judge Allred went on to find that Plaintiff had the RFC to perform light work with occasional postural limitations and overhead reaching with the left upper extremity; no exposure to extremes of cold, heavy vibrations, or hazards; and no interaction with the public. He could

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

work in the vicinity of others, but not in cooperative teams, group meetings, or other group activities, and needed a stable work routine with few changes. Tr. 20. At step four, relying on the testimony of a vocational expert ("VE"), Judge Allred found Plaintiff was unable to perform his past relevant work, but could perform other work at step five and, therefore, was not disabled. Tr. 27.

## DISCUSSION

### A. Plaintiff's Testimony

The ALJ is responsible for weighing a claimant's allegations and resolving ambiguities in the evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). An ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated . . . ." SSR 16-3p, 2017 WL 5180304, *10. If a claimant has an underlying impairment that could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering, an ALJ may discredit the claimant's subjective pain testimony by providing "specific, clear, and convincing reasons" for doing so. *See*, *e.g.*, *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999). Regardless of the standard, "questions of credibility and resolutions of conflicts in the testimony are functions solely of the [ALJ]." *Id*. Here, the ALJ provided multiple reasons for discounting Plaintiff's subjective complaints based on inconsistencies and other evidence. Tr. 22-23. Because the ALJ provided multiple reasons, any error is harmless if a valid reason remains. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

First, the ALJ noted that Plaintiff's treating medical providers found him with fewer functional limitations than those Plaintiff reported. Plaintiff testified he could not manage a light-duty job full time (Tr. 49), and he needed to lie down at least six times a day for between 30

ORDER REVERSING AND REMANDING - 3

minutes to nearly two hours. Tr. 54. On January 24, 2017, Plaintiff's treating physician Dr. Terrill Utt opined that Plaintiff could perform light work activity with no pushing, pulling, or lifting greater than 20 pounds and no overhead working, or working at heights. Tr. 22 (citing Ex. 4F, p. 8). The ALJ gave Dr. Utt's opinions considerable weight as they are based on an established and ongoing treatment relationship and firsthand knowledge of Plaintiff's physical impairments and symptoms. *Id.* In addition, Anne Albert, P.A. and Gregory Raapana, P.A. also concluded that Plaintiff maintained the capacity to lift at least 20 pounds and could continue working. Tr. 257, 278. The ALJ also noted that none of Plaintiff's treating sources concluded that Plaintiff's impairments and symptoms would be preclusive of all work at any level of exertion and none subsequently revised their opinions or documented worsening of Plaintiff's impairments and symptoms. Tr. 22-23. The ALJ did not err in considering contradictory evidence from Plaintiff's treating sources when weighing Plaintiff's testimony. When weighing a claimant's statements, the ALJ may consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). And when a claimant's statements contradict the medical record, that "is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008) (Plaintiff's testimony that he can lift only 10 pounds occasionally versus physician's opinion that he can lift up to 10 pounds frequently).

      Second, the ALJ noted that Plaintiff has longstanding degenerative disorders of the spine, which predated the alleged onset of disability by a "significant margin" and that after Plaintiff injured his spine in 2002 and was honorably discharged from Army service on that basis, he began work as a heavy equipment mechanic at Fort Lewis, and persisted in that capacity for

years despite his spinal impairments and migraines. Tr. 23. The ALJ also cited to medical evidence that Plaintiff's pain improved with treatment. *Id.* In July 2017, after Plaintiff's cervical spine surgery, his physician noted that his spine was improving with physical therapy and recommended simply continuing with that conservative treatment. Tr. 583. Plaintiff was also taking medication for his chronic pain, which his physician noted in March 2018, was stable. Tr. 659. And Plaintiff underwent a laminectomy procedure that resulted in "resolution of his bilateral lower extremity symptoms". Tr. 575. The ALJ did not err in this assessment as impairments that can be controlled with treatment are not disabling. *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Third, the ALJ pointed out that Plaintiff worked in the past despite Plaintiff's alleged disabling impairments. Tr. 23. For example, Plaintiff complained of migraines when working for the Navy, work that dated back to 1997 (Tr. 306, 480); he reported that following deployments to the Persian Gulf, he experienced symptoms that included joint and muscle pain and headaches (Tr. 603); and even though he was discharged from service for medical reasons, he worked as a heavy equipment operator for years after his discharge despite his headaches (*see*, *e.g.*, Tr. 213 (issues with headaches began 12 years prior); *see also* Tr. 169-72, 176-77 (substantial gainful employment years after he left the military). Plaintiff also alleged he was irritable (Tr. 514) and had difficulty getting along with others. Tr. 220. The ALJ noted that Plaintiff reported mental health symptoms also dating back to 1997 when he left the Navy (Tr. 514) but was able to maintain employment thereafter. Based on the foregoing, the ALJ did not err. An ALJ may discount a claimant's allegations that an impairment is disabling when the alleged impairment did not previously prevent him from working and has not worsened. *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) ("Furthermore, substantial evidence indicated that the condition

of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time.").

Fourth, the ALJ noted that while Plaintiff reported 3 to 4 migraines per month (citing Ex. 9F, p. 16), there are few records where Plaintiff complained about acute migraine episodes or chronic symptomatology; there are no neurologic deficits; and, even assuming the migraines occur with the frequency alleged, they have been present since Plaintiff's Navy service, which ended in 1997 (citing Ex. 3F, p. 18, Ex. 4F, p. 95, Ex. 5F, p.3) and did not preclude heavy work as an equipment operator, which Plaintiff began in 2003 and continued for many years. Tr. 24. Based on this evidence, it was not unreasonable for the ALJ to conclude that Plaintiff was able to work at a substantial gainful activity level for many years with his migraine impairment and with no apparent worsening of the frequency intensity, or duration of his symptoms. *Id.*

Plaintiff argues that "[o]nce he knew what they were and was prescribed medication that helped to alleviate them, there was no reason to continuously report them to his medical providers . . . ." Dkt. 10, p. 7. However, because Plaintiff received medication that "helped alleviate" his migraines and thereafter did not continue to report debilitating symptoms or seek more aggressive treatment, this confirms the ALJ's conclusion that his symptoms were not debilitating and undermined his claim that his headaches would prevent him from performing even sedentary jobs (Tr. 56). Plaintiff did not report ongoing debilitating migraine symptoms to his providers or seek more aggressive treatment for that condition. It was not error for the ALJ to consider this evidence in discounting Plaintiff's symptom testimony. *See*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The type of treatment a claimant seeks for their pain "is powerful evidence regarding the extent to which [he] was in pain.") An ALJ may consider a claimant's

failure to report symptoms as when discounting the claimant's allegations of debilitating impairments. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006).

Similarly concerning Plaintiff's reports of irritability and agitation, the ALJ noted that these have been present since Plaintiff left Navy service in 1997 (Ex. 7F, p.7), from which he was honorably discharged (Ex. 8F, p.3). Tr. 18. The ALJ also noted that the longitudinal treatment notes indicate Plaintiff has not been observed with antisocial or inappropriate behavior in the clinical setting, he is able to drive an automobile and go out in public unaccompanied, and is able to attend his medical appointments unaccompanied. Tr. 18 (citing Ex. 5E, p. 4, Ex. 7E, p. 4; Ex. 5F, p.2). Nevertheless, the ALJ concluded Plaintiff should be limited to work that does not involve interaction with the public and while Plaintiff could work in the vicinity of others, he should not be involved in cooperative teams, group meetings, or other group activities in an employment setting. Tr. 23. Moreover, it was not error for the ALJ to discount Plaintiff's symptom allegations when his impairments did not previously prevent him from working and have not worsened. *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) ("Furthermore, substantial evidence indicated that the condition of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time.").

In sum, substantial evidence supports the ALJ's valid reasoning to discount Plaintiff's allegations of debilitating impairments.

**B.      Medical Evidence**

An ALJ is not required to provide an explanation for accepting an opinion, but must explain why he rejected an opinion. SSR 96-8p, available at 1996 WL 374184 at *7. When an ALJ rejects a doctor's opinion that contradicts another doctor's opinion, he may do so with

ORDER REVERSING AND REMANDING - 7

"specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 1. Examining Physician Dr. Angela Chan

Plaintiff contends the ALJ failed to give specific and legitimate reasons for rejecting the opinion of the VA's examining physician, Dr. Angela Chan. Dr. Chan completed three disability benefits questionnaires in connection with Plaintiff's VA disability rating on April 4, 2018. First, she opined that Plaintiff has continued radiculary pain bilaterally, marked decrease in range of motion and has difficulty finding a comfortable position and therefore, would have difficulty sitting in one position in order to work and is obviously unable to do physical work. Tr. 644-645.

Second, Plaintiff reported to Dr. Chan that his headaches have worsened over the years; "he currently has tension headaches every other day and migraine headaches 3-4 times a month;" and he "missed about 5 days a month of work and when he has migraine heaches he ends up missing work." Tr. 646-647. Dr. Chan noted that Plaintiff has been prescribed meloxicam and cyclobenzaprine, and discovered nothing during the examination requiring immediate medical care or further revaluation for treatment purposes. Tr. 647-648.

Third, Dr. Chan addressed Plaintiff's diagnosis of cervical radiculopathy, noting Plaintiff's three neck surgeries and remarking that at the time of the examination, "the patient has right sided symptoms are occurring daily at 6/10 pain. The left sided symptoms are present 24 hours a day and is at 8/10. There is burning pain constantly. The numbness goes down into the entire left hand. Right hand numbness is minimal in the thum[b] and idle finger." Tr. 648-649. Dr. Chan concluded that Plaintiff would have difficulty using his arms due to chronic severe pain. Tr. 653.

The Commissioner concedes the ALJ erred by crediting Dr. Chan's physical assessment without fully accommodating Dr. Chan's opinion that given Plaintiff's physical impairments, "he would need sedentary work" in Plaintiff's RFC. The ALJ's RFC conflicted with Dr. Chan's opinion because he restricted Plaintiff only to a limited range of light work. At step five, the ALJ made alternative findings regarding Plaintiff's ability to perform sedentary work. Tr. 28. The VE testified that given Plaintiff's other limitations in the RFC, along with an additional restriction to sedentary work, there were sedentary jobs existing in significant numbers in the national economy that Plaintiff could perform (document preparer, escort vehicle driver, and touchup screen PCB assembly). Tr. 28. Thus, the ALJ alternatively accounted for a sedentary limitation. However, the ALJ failed to account for Dr. Chan's opinions that even if Plaintiff was limited to sedentary work, he would have "difficulty sitting in one position in order to work" and would have difficulty using his arms due to chronic severe pain. Tr. 644, 653. The ALJ did not address whether the light and sedentary jobs identified by the VE would allow Plaintiff to change positions or require him to frequently or constantly use his arms. Tr. 28. The ALJ's failure to address or specifically address these portions of Dr. Chan's opinions was error.

The Court finds no error in the ALJ's treatment of Dr. Chan's assessment regarding Plaintiff's headaches because that assessment was based primarily on the Plaintiff's subjective reports rather than objective findings. An ALJ may reject a "physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted). Further, the ALJ's conclusion that the frequency, intensity, and duration of the migraine headaches alleged by Plaintiff are not supported by the longitudinal medical evidence and Plaintiff's work history, with no apparent worsening or increase in frequency of episodes was not error. Tr. 26-27. Dr.

Chan offered no opinion or limitations regarding Plaintiff's migraine headaches, but merely noted what Plaintiff reported to her. The demonstrated ability to work full-time despite Plaintiff's impairments is a valid reason to discount a doctor's opinion suggesting a claimant's limitation render him unemployable. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Therefore, the ALJ rationally found that if Dr. Chan believed Plaintiff's migraines would consistently cause work absences, her opinion was inconsistent with Plaintiff's work history.

However, because the ALJ provided no explanation for failing to account for the entirety of Dr. Chan's opinions – that Plaintiff would have "difficulty sitting in one position in order to work" and would have difficulty using his arms due to chronic severe pain – the ALJ must reconsider Dr. Chan's opinions and either credit them or provide legally sufficient reasons to discount them.

### 2. DDS Consultant Dr. Michael Brown

Although the ALJ gave great weight to the opinion of DDS consultant, Dr. Michael Brown, Plaintiff contends the ALJ failed to include all of Dr Brown's limitations in Plaintiff's RFC – specifically, that Plaintiff had mild to moderate limitations in his ability to maintain regular attendance and complete a normal workday or workweek without interruptions from psychologically based symptoms. Tr. 89.

Plaintiff contends it was error for the ALJ to not include absences in his RFC finding because the VE testified that an individual who is not able to work forty hours per week or would be absent at least two days per month could not be competitively employed (Tr. 61). Dkt. 10, pp. 10-11. The term "moderate" in the context of assessing mental limitations means, "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is

fair." 81 Fed. Reg. 66137, 66164 (Sept. 26, 2016).[2] A mental impairment that results in mild or moderate mental deficits in the broad functional criteria—including moderate impairments in the ability to complete a normal workday or workweek and maintain regular attendance and perform activities within a schedule—does not constitute a "sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).

Dr. Brown suggested Plaintiff had "mild-moderate" limitations with respect to maintaining regular attendance and completing a normal workweek, and also found that Plaintiff appeared to be able to sustain concentration, persistence, and pace without "significant issues when working independently." Tr. 89. Thus, the ALJ had no obligation to account for routine unexcused absences in the RFC. Moreover, the ALJ assessed other significant restrictions to accommodate Plaintiff's psychological impairments, such as limiting him to jobs that had a stable work routine with few changes, no interactions with the public or work in cooperative teams, and no group meetings or other group activities. Tr. 20.

In sum, the ALJ did not err in his treatment of Dr. Brown's opinion and substantial evidence supports the ALJ's decision in this regard.

**C.     Lay Witness Testimony**

Naomi S., who has been married to Plaintiff for eighteen years, reported that Plaintiff's pain and lack of sleep due to pain were debilitating at times, making it difficult for him to function or even walk and his activities varied day by day, based on his pain level. Tr. 204-205. Pain made it difficult for him to bend, twist, and pull when dressing; reach when caring for his hair; and stand when shaving. Tr. 205. Ms. S. stated that she did the house and yard work and

---

[2] Available at https://www.gpo.gov/fdsys/pkg/FR-2016-09-26/pdf/2016-22908.pdf.

Plaintiff did some light chores, such as changing lightbulbs and dusting, but needed positive reinforcement. Tr. 206-07. Ms. S. also stated Plaintiff no longer pursued his hobbies of hunting, fishing, golfing, and camping, and got overwhelmed and irritated when dealing with others, and he isolated himself from his friends and family. Tr. 209. Ms. S. thought the most Plaintiff could lift was five pounds and that he could only walk 500 feet before needing to rest for 10 minutes. *Id.* She also observed that some of his medications caused dizziness. Tr. 211.

The ALJ gave some weight to Ms. S's third party function report:

> I have finally considered and give some weight to the November 14, 2016 third party function report from Naomi Samson, the claimant's wife (Ex. 5E). Ms. Samson's report that the claimant has a history of difficulty getting along with others, including Article 15 discipline for fighting while in the Navy (many years ago when he was young), is persuasive and has been considered in limiting the claimant's work-related social interaction. Her observation that the claimant does light household chores, drives, and can walk 500 feet also indicates that the claimant retains physical abilities sufficient for sedentary or light exertional activity.

Tr. 27.

The ALJ must provide specific, germane reasons for rejecting lay witness testimony. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006), 20 C.F.R. § 404.1513(d)(4), *Dodrill v. Shalala*, 12 F.3d 915 918-19 (9th Cir. 1993). The ALJ gave reasons for rejecting Plaintiff's testimony regarding his symptoms that may be equally relevant to the similar testimony of Ms. S, and that would support a finding that the lay testimony was similarly not credible. But under our rule that lay witness testimony "cannot be disregarded without comment," *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), the ALJ erred in failing to explain his reason for disregarding the bulk of Ms. S's report. In addition, is is unclear how Plaintiff's ability to dust, drive, and walk only 500 feet before needing to rest indicates that he retains physical abilities

sufficient for a full time sedentary or light job. The ALJ must reconsider the entirety of Ms. S's report and either credit her opinions or comment prior to disregarding them.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reconsider Dr. Chan's opinion and the third party function report of Plaintiff's wife, develop the record and reassess Plaintiff's RFC as necessary, and proceeding to the remaining disability assessment steps as appropriate.

DATED this 4th day of September, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge